*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SOO JIN KIM and YERIKO VARGAS,

        Plaintiffs/Counterdefendants-
Appellees/Cross-Appellants,

v

ESENCIA LIMITED, LLC,

        Defendant/Counterplaintiff-
Appellant/Cross-Appellee,

and

JMC MANAGEMENT, LLC,

        Defendant-Cross-Appellee.

UNPUBLISHED
May 13, 2026
2:07 PM

No. 373849
Oakland Circuit Court
LC No. 2023-200825-CK

Before: BAZZI, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

Defendant Esencia Limited, LLC appeals by right the Oakland Circuit Court's order denying its motion for offer-of-judgment sanctions against plaintiffs under MCR 2.405(D). Plaintiffs cross-appeal the trial court's denial of their motion for partial summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact), as well as its conclusion during the bench trial that certain statements were mere puffery that could not support a claim for fraudulent misrepresentation. We affirm in part, vacate in part, and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This matter arose out of a landlord-tenant dispute. In April 2023, plaintiffs searched for an apartment to rent after a fire destroyed their previous apartment. Plaintiff Soo Jin Kim reached out to Trena Edmondson, an employee of defendant JMC Management, LLC, a property management company, and asked to tour a loft owned by Esencia. Kim testified that during the tour, Edmondson stated that a "nice lady" lived in the neighboring unit. Edmondson also informed

plaintiffs that the apartments "go quick" and that other parties were interested in the unit. Plaintiffs alleged that Edmondson seemed to be rushing them into leasing the loft, although plaintiff Yeriko Vargas later conceded that plaintiffs themselves felt rushed to leave their temporary living situation.

On April 27, 2023, plaintiffs and Esencia executed a residential lease on the loft for a two-year term beginning on June 1, 2023. Plaintiffs paid $6,250 for the first month's rent, a cleaning fee, and a security deposit. The lease required plaintiffs to pay $2,200 per month for the loft. When plaintiffs began moving into the loft, they encountered a man in the stairwell; Kim recognized the man from a previous negative interaction, and the encounter left her feeling "uncomfortable." After seeing the man again, plaintiffs moved out of the loft on April 30, 2023[1] and informed Edmonson that they wished to terminate the lease. Edmondson testified that between May 2023 and December 2023, she did not think to make the listing for the loft available to the public because company policy was to not place a property back on the market when there was already an existing lease. Defendants relisted the loft in December 2023 at an asking price of $2,500 per month.

On June 9, 2023, plaintiffs initiated this lawsuit. Plaintiffs sought a declaratory judgment establishing that the lease was null and void because of mutual mistake and fraud in the inducement and an order requiring Esencia to return the $6,250 that plaintiffs had already paid for the loft. Defendants answered the complaint, and Esencia filed a counterclaim asserting its right to the rental payments and late fees as specified in the lease agreement. On August 2, 2023, Esencia made an offer of judgment under which plaintiffs would pay Esencia $4,710 and dismiss their claims with prejudice. Esencia further noted that if the offer was rejected, it would seek an award for costs. Plaintiffs admit that they rejected this offer by their silence.

Defendants moved for summary disposition under MCR 2.116(C)(8) and (10). Plaintiffs also moved for partial summary disposition under MCR 2.116(C)(10), arguing that defendants could not recover for plaintiffs' breach of contract because defendants did not sufficiently mitigate their damages. The trial court partially granted defendants' motion under MCR 2.116(C)(10) with respect to plaintiffs' mutual-mistake claim, but it denied the motion with respect to plaintiffs' claim of fraudulent misrepresentation. Additionally, the trial court denied plaintiffs' motion for partial summary disposition because the reasonableness of mitigation efforts is generally a determination for the trier of fact and because it found that there were genuine issues of material fact about whether defendants' efforts to mitigate their loss were reasonable.

The remaining claims proceeded to a bench trial on July 25, 2024. At that time, the loft unit was still vacant despite the new listing. After the trial, the court found that Edmondson's statements about the market conditions and other interested parties were "puffing" and that plaintiffs had not proved that they amounted to material misrepresentations. The court further held that Esencia had proved its breach-of-contract claim and was entitled to damages in the amount of

---

[1] Plaintiffs were able to move into the apartment before the lease term began because they had received free rent from April 27, 2023 through May 30, 2023 as an incentive.

$37,467.15. It entered judgment against plaintiffs in the amount of $45,682.67, accounting for the damages found at trial plus $1,443 in costs and $6,772.52 in interest.

On December 2, 2024, Esencia filed a motion for offer-of-judgment sanctions. Esencia sought "actual costs" from plaintiffs under MCR 2.405(D), arguing that the adjusted verdict was more favorable to Esencia than the average offer. Plaintiffs filed a response to the motion in which they disputed the actual value of the offer, asserted that the case fell within an interest-of-justice exception, and argued that the requested attorney fees were unreasonable. The trial court denied Esencia's motion for offer-of-judgment sanctions. This appeal followed.

## II. MOTION FOR OFFER-OF-JUDGMENT SANCTIONS

Esencia argues that the trial court erred by denying its motion for offer-of-judgment sanctions. We agree.

### A. STANDARD OF REVIEW

This Court reviews de novo the interpretation of court rules. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). "The interpretation and application of the offer of judgment rule" are also reviewed de novo. *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 297; 769 NW2d 234 (2009). However, this Court "review[s] for an abuse of discretion the trial court's decision regarding whether to refuse to award attorney fees under the interest-of-justice exception." *Simcor Constr, Inc v Trupp*, 322 Mich App 508, 514; 912 NW2d 216 (2018) (quotation marks and citation omitted). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008).

### B. ANALYSIS

In its motion for offer-of-judgment sanctions, Esencia sought to recover its actual costs from the litigation. "Actual costs" are defined as "the costs and fees taxable in a civil action and a reasonable attorney fee, dating to the rejection of the prevailing party's last offer or counteroffer, for services necessitated by the failure to stipulate to the entry of judgment." MCR 2.405(A)(6). If a party rejects an offer, then the trial court may order it to pay the other party's actual costs under certain circumstances:

> (D) Imposition of Costs Following Rejection of Offer. If an offer is rejected, costs are payable as follows:
>
> (1) If the adjusted verdict is more favorable to the offeror than the average offer, the offeree must pay to the offeror the offeror's actual costs incurred in the prosecution or defense of the action.
>
> * * *
>
> (3) The court shall determine the actual costs incurred. The court may, in the interest of justice, refuse to award an attorney fee under this rule. Interest of justice exceptions may apply, but are not limited to:

-3-

(i) cases involving offers that are token or de minimis in the context of the case; or

(ii) cases involving an issue of first impression or an issue of public interest. [MCR 2.405(D)(1) and (3).]

An offer is defined as "a written notification to an adverse party of the offeror's willingness to stipulate to the entry of a judgment in a sum certain, which is deemed to include all costs and interest then accrued." MCR 2.405(A)(1). An average offer is "the sum of an offer and a counteroffer, divided by two. If no counteroffer is made, the offer shall be used as the average offer." MCR 2.405(A)(3).

Esencia contended in its motion that the average offer in this case was $4,710 because plaintiffs never made a counteroffer and Esencia never made any additional offers, so the average offer was the same as Esencia's initial offer of $4,710. In response, plaintiffs contended that plaintiffs' actual offer (and thus the average offer) was $57,160, which represented the $4,710 demanded, the unreimbursed $6,250 value that plaintiffs had already paid for the unit, and the remaining $46,200 in rent that was due under the lease. Therefore, according to plaintiffs, the adjusted verdict ($45,682.67) was actually less than the average offer, such that offer-of-judgment sanctions were not warranted under MCR 2.405(D).

We conclude that the trial court erred when it adopted plaintiffs' characterization of the average offer.[2] The plain language of MCR 2.405(A)(1) is clear: an offer must be for a "sum certain," which already represents "*all* costs and interests then accrued." (Emphasis added). Accordingly, the $4,710 offer of judgment accounted for all relevant circumstances, and plaintiffs' adjustments to that sum certain were erroneous. The average offer in this case was therefore $4,710, the amount stated in Esencia's written notice (to which plaintiffs did not respond) of its willingness to stipulate to an entry of judgment. This value is indisputably lower than the later adjusted verdict of $45,782.67. As a result, the adjusted verdict was more favorable to Esencia than was its earlier offer of judgment. We therefore conclude that the trial court abused its discretion by accepting plaintiffs' assertion that the offer-of-judgment rule did not apply to this case because the adjusted verdict was lower than the value of the offer.

We further conclude that the trial court erred to the extent it may have found that an "interest of justice" exception, MCR 2.405(D)(3), applied.[3] The interest-of-justice exception is a

---

[2] The trial court's order simply said that the court was denying Esencia's motion "for the reasons stated in [plaintiffs'] response." However, the principal argument that plaintiff made in its response to Escenia's motion was that the average offer was $57,160 and that offer-of-judgment sanctions were not warranted under MCR 2.405(D) because the average offer exceeded the adjusted verdict of $45,682.67.

[3] We are unable to discern from the trial court's order that it was exercising its discretion to conclude that an interest-of-justice exception applied. As noted, the trial court's order merely stated that it was denying Esencia's motion "for the reasons stated in [plaintiffs'] response," and the principal argument made by plaintiff in its response related to whether the offer-of-judgment

remedy of an "exceptional nature," *Luidens v 63rd Dist Court*, 219 Mich App 24, 33; 555 NW2d 709 (1996), and it should only be applied in "unusual circumstances," *Harbour v Correctional Med Servs, Inc*, 266 Mich App 452, 466; 702 NW2d 671 (2005) (quotation marks and citation omitted). "What constitutes 'in the interest of justice' must be decided on a case-by-case basis." *Andreson v Progressive Marathon Ins Co*, 322 Mich App 76, 94; 910 NW2d 691 (2017) (quotation marks and citation omitted). In *Luidens*, 219 Mich App at 35, this Court noted that situations in which an interest-of-justice exception would apply include when parties "make offers of judgment for gamesmanship purposes, rather than as a sincere effort at negotiation," such as making "a *de minimis* offer of judgment early in a case in the hopes of tacking attorney fees to costs if successful at trial." See also *Sanders v Monical Machinery Co*, 163 Mich App 689, 693; 415 NW2d 276 (1987). In *Harbour*, 266 Mich App at 466, this Court noted additional unusual circumstances that supported the invocation of an interest of justice exception, including "where the law is unsettled and substantial damages are at issue . . . or where the effect on third persons may be significant." (Quotation marks and citation omitted).

Plaintiffs argue that the timing of Esencia's offer presented an unusual circumstance that justified applying an interest-of-justice exception. Esencia made the offer early in the case, before any depositions or other forms of discovery were performed. According to plaintiffs, this suggested that Esencia's offer may have been for gamesmanship purposes or to reserve the possibility of "tacking attorney fees to costs if successful at trial." *Luidens*, 219 Mich App at 35. But this argument overlooks that a $4,710 settlement amount was far from a *de minimis* offer of judgment. Considering that the trial court ultimately awarded $45,782.67 in damages, Escencia's offer was actually *generous* toward plaintiffs and demonstrated a sincere effort at negotiation in order to avoid protracted litigation, which aligns with the purpose of granting attorney fees under MCR 2.405(D). See *Sanders*, 163 Mich App at 691-692. Plaintiffs have not demonstrated that an interest-of-justice exception should apply, and Esencia therefore would have been entitled to its actual costs, including a reasonable attorney fee, but for the trial court's error in adopting plaintiff's position that the offer-of-judgment rule did not apply in the first place. This was not a harmless error, and we therefore reverse the order denying Esencia's motion for offer-of-judgment sanctions and remand for the trial court to determine Escencia's actual costs, including a reasonable attorney fee.

## III. MITIGATION OF DAMAGES

Plaintiffs argue that they were entitled to partial summary disposition because defendants failed to properly mitigate their damages after plaintiffs vacated the loft. We disagree.

## A. STANDARD OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95, 109; 1 NW3d 44 (2023). For motions for summary

---

rule applied at all in these circumstances. We therefore conclude that if the trial court intended its order to also in some fashion find applicable an interest-of-judgment exception to the offer-of-judgment rule, it abused its discretion by failing to identify the applicable exception and by failing to provide any rationale for how or why that exception applied in these circumstances.

disposition brought under MCR 2.116(C)(10), this Court must examine the evidence submitted by the parties in the light most favorable to the nonmovant. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999), citing MCR 2.116(G)(5). The trial court may grant a motion for summary disposition "if the affidavits or other documentary evidence show that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996), citing MCR 2.116(G)(4). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Kandil-Elsayed*, 512 Mich at 110 (quotation marks and citation omitted).

B. ANALYSIS

"The injured party in a contract action must make every reasonable effort to minimize his or her damages." *King v Taylor Chrysler-Plymouth, Inc*, 184 Mich App 204, 213-214; 457 NW2d 42 (1990). "Specifically, when one has committed a legal wrong against another, the latter has an obligation to use reasonable means under the circumstances to avoid or minimize his or her damages and cannot recover for damages that could thus have been avoided." *Landin v Healthsource Saginaw, Inc*, 305 Mich App, 519, 538; 854 NW2d 152 (2014). The injured party's obligation to mitigate damages "is not onerous, and does not require him to be successful in mitigation." *Rasheed v Chrysler Corp*, 445 Mich 109, 123; 517 NW2d 19 (1994) (quotation marks and citation omitted). The reasonableness of these efforts is a question for the trier of fact. *Morris v Clawson Tank Co*, 459 Mich 256, 269; 587 NW2d 253 (1998).

The trial court did not err by denying plaintiffs' motion for partial summary disposition because genuine issues of material fact remained regarding the reasonableness of defendants' mitigation efforts. Defendants attempted to place the loft back on the market in December 2023.[4] Additionally, the term of the lease term began in June, not April. Plaintiffs had also already paid the first month's rent in advance, and the security deposit reflected an additional month and a half of rent. As a result, the first two and half months of plaintiffs' rent was essentially prepaid at the time that plaintiffs vacated the unit. This fact makes defendants' lack of urgency in placing the loft back on the market more reasonable, as the loft was paid for through mid-August. And by attempting to relet the loft before the end of the lease term, defendants made at least some efforts to mitigate their loss of rental payments from plaintiffs. Because reasonable minds could differ regarding whether the timing of defendants' actions was reasonable, genuine issues of material fact remained that precluded summary disposition on the issue of mitigation.

The same can be said for the question whether defendants' pricing of the loft was reasonable. It is undisputed that the loft was placed back on the market with a monthly rental rate

---

[4] Edmondson testified during her deposition that the loft was relisted in December 2023, but Esencia submitted an affidavit with its response to plaintiffs' motion for summary disposition in which Edmondson stated that the loft was relisted in August 2023. "[A] witness is bound by his or her deposition testimony, and that testimony cannot be contradicted by affidavit in an attempt to defeat a motion for summary disposition." *Casey v Auto Owners Ins Co*, 273 Mich App 388, 396; 729 NW2d 277 (2006) (2007). We therefore accept that the loft was relisted in December 2023, despite the affidavit's statement to the contrary.

of $2,500, which was $300 more per month than plaintiffs agreed to pay in their lease agreement. Defendants clarified that this was merely the listing price and that they were also willing to settle for $2,200 for a future tenant. Furthermore, at the time of the deposition, the listing had only been publicly available for a few weeks. A fact-finder could conclude that if defendants struggled to secure a new tenant, they would be willing and able to lower the listing price.

The trial court correctly concluded that the reasonableness of defendants' mitigation efforts presented genuine issues of material fact. Accordingly, the trial court did not err by denying plaintiffs' motion for partial summary disposition, and we affirm its order in that respect.

## IV. FRAUDULENT MISREPRESENTATION

Plaintiffs also argue that the trial court erred as a matter of law when it found Edmondson's statements to be nonactionable "puffing." Instead, plaintiffs contend that these statements were misrepresentations that fraudulently induced them into entering into the lease agreement. We disagree.

### A. STANDARD OF REVIEW

The trial court's factual findings from a bench trial are reviewed for clear error, and its conclusions of law are reviewed de novo. *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003). "A finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made." *Id*.

### B. ANALYSIS

Fraudulent misrepresentation, also known as actionable fraud, is a common-law doctrine that allows a party to recover damages suffered from its reliance on the other party's false statements. *Titan Ins Co v Hyten*, 491 Mich 547, 555-558; 817 NW2d 562 (2012). To succeed on a claim of fraudulent misrepresentation, the plaintiff must prove the following:

> (1) the defendant made a material representation, (2) the representation was false, (3) when making the representation, the defendant knew or should have known it was false, (4) the defendant made the representation with the intention that the plaintiff would act upon it, and (5) the plaintiff acted upon it and suffered damages as a result. [*Novak v Nationwide Mut Ins Co*, 235 Mich App 675, 688; 599 NW2d 546 (1999).]

However, "[a]n action for fraud may not be predicated upon the expression of an opinion or salesmen's talk in promoting a sale, referred to as puffing." *Van Tassel v McDonald Corp*, 159 Mich App 745, 750; 407 NW2d 6 (1987). In *Van Tassel*, this Court further elaborated on the legality of puffing:

> [W]e are here in the realm of what the common law has for years termed 'puffing,' a salesman's praise of his own property, involving matters of estimate or judgment upon which reasonable men may differ. Ordinarily these are not regarded as actionable, even though the vendee's joys of realization fall short of those of his

-7-

anticipation. The reason for this lies in the realities of commercial intercourse. [*Id.* at 751 (quotation marks and citation omitted; alteration in original).]

In other words, "it is within normal expectations of commercial dealing for salesmen to 'hype' their products beyond objective proof." *Id.*

The trial court concluded that Edmondson's statements that the lofts "go quick" and that others were interested in the loft constituted puffing, rather than material misrepresentations. We agree. Edmondson's assertion that the lofts tend to be leased quickly was merely her attempt to "hype" up the popularity of the lofts to make them more attractive to prospective tenants. The statement that the lofts "go quick" is beyond objective proof because it reflects a subjective determination, especially when Edmondson did not qualify the statement with any benchmark.[5]

Edmondson's assertion that there were other parties interested in the loft is also mere puffery. This Court has previously held that assertions regarding the interest of additional, unnamed parties can be considered puffery. See, e.g., *George v Spencer*, 56 Mich App 249, 253-254; 223 NW2d 736 (1974) (holding that statements that other parties were interested in a property at a certain price were "expressions of opinion, not fact"). Similarly, we hold that Edmondson's vague reference to other parties being interested in the loft was puffery that cannot form the basis for a claim of fraudulent misrepresentation. See *id.* Accordingly, the trial court did not clearly err by concluding that Edmondson's assertions were puffery rather than fraudulent misrepresentations.

## V. CONCLUSION

The trial court erred by denying Esencia's motion for offer-of-judgment sanctions. It did not err when it found that Esencia's promotional statements about the loft's popularity were mere puffery, nor did it err when it denied plaintiff's motion for partial summary disposition because there were genuine issues of material fact regarding whether Esencia's attempts to mitigate damages were reasonable. Accordingly, we affirm in part, vacate in part, and remand for further proceedings to determine Escencia's actual costs, including a reasonable attorney fee, under MCR 2.405(D). We do not retain jurisdiction.

/s/ Mariam S. Bazzi
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle

---

[5] In any event, Kim testified at trial that she was already aware that apartments in the area tended to be leased quickly, and Edmondson testified that Esencia's other lofts in the area "do go quick." Therefore, plaintiffs have failed to prove that Edmondson knew that her statement was false or that they acted upon that statement as opposed to their preexisting understanding of the market conditions of apartments in the area. See *Novak*, 235 Mich App at 688.